UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-24128-CIV-MARTINEZ

JARVIS ARRINGTON, GENEVA BLANCHARD,
and SANDRA MUNSTER, individually and on
Behalf of all others similarly situated,

    Plaintiffs,

vs.

BURGER KING WORLDWIDE, INC., BURGER
KING CORPORATION, RESTAURANT
BRANDS INTERNATIONAL, INC., and
RESTAURANT BRANDS INTERNATIONAL
LIMITED PARTNERSHIP,

    Defendants.
_____/

# DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

| | |
|---|---|
| Stuart H. Singer<br>Florida Bar No. 377325<br>ssinger@bsfllp.com<br>Carl E. Goldfarb<br>Florida Bar No. 125891<br>cgoldfarb@bsfllp.com<br>**BOIES SCHILLER FLEXNER LLP**<br>401 East Las Olas Boulevard<br>Suite 1200<br>Fort Lauderdale, FL 33301 | Luis E. Suarez<br>Florida Bar No. 390021<br>lsuarez@hsmpa.com<br>Mark J. Heise<br>Florida Bar No. 771090<br>mheise@hsmpa.com<br>Patricia A. Melville<br>Florida Bar No. 475467<br>pmelville@hsmap.com<br>**HEISE SUAREZ MELVILLE, P.A.**<br>1600 Ponce De Leon Blvd., Suite 1205<br>Coral Gables, FL 33134 |

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

    1.    Governing law ................................................................................................................ 2

    2.    A per se analysis is not applicable here ........................................................................ 2

    3.    The McDonald's decision in the *Deslandes* case is distinguishable .......................... 5

    4.    The prior Eleventh Circuit opinion in *Arlington* does not address the current issues before this Court ................................................................................................ 7

    5.    Plaintiffs do not and cannot state a claim under rule of reason ................................ 10

CONCLUSION ................................................................................................................................. 14

CERTIFICATE OF SERVICE ........................................................................................................ 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*,
  135 F.3d 740 (11th Cir. 1998) ................................................................................................ 4

*Arizona v. Maricopa Cty. Med. Soc.*,
  457 U.S. 332 (1982) ................................................................................................................ 9

*Arrington v. Burger King Worldwide, Inc.*,
  47 F4th 1247 (11th Cir. 2022) ................................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 2, 4, 10, 12

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
  485 U.S. 717 (1988) .................................................................................................... 2, 3, 4, 8

*Cont'l T.V., Inc. v. GTE Sylvania*,
  433 U.S. 36 (1977) .................................................................................................................. 3

*Deslandes v. McDonald's USA, LLC*,
  81 F. 4th 699 (7th Cir. 2023) .............................................................................................. 5, 6

*Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955,
  Case No. 1:17-cv-04857, (ND. Ill. June 35, 2018) ................................................................ 5

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) .................................................................................................. 9

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
  732 F.2d 480 (5th Cir. 1984) .................................................................................................. 7

*FTC v. Ind. Fed'n of Dentists*,
  476 U.S. 447 (1986) .............................................................................................................. 12

*Giordano v. Saks & Co. LLC*,
   2025 U.S. App. LEXIS 5871 (2d Cir. March 13, 2025) ......................................................... 6

*In re American Express Anti-Steering Rules Antitrust Litigation*,
  361 F.Supp.3d 324(E.D.N.Y. 2019) ....................................................................................... 7

*Jacobs v. Tempur-Pedic Internal, Inc.*,
  626 F.3d 1327 (11th Cir. 2010) ....................................................................................... 3, 10

*Johnson v. Shelby*,
    574 U.S. 10 (2014) .................................................................................................................. 2

*Leegin Creative Leather Prods. v. PSKS, Inc.*,
    551 U.S. 877 (2007) ..................................................................................................... 3, 4, 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................................................. 2

*Midwestern Waffles, Inc. v. Waffle House, Inc.*,
    734 F.2d 705 (11th Cir. 1984) ................................................................................................. 9

*Monsanto Co. v. Spray-Rite Service Corp.*,
    465 U.S. 752 (1984) .................................................................................................................. 2

*Music, Inc. v. Columbia Broad. Sys., Inc.*,
    41 U.S. 1 (1979) ....................................................................................................................... 4

*NCAA v. Bd. of Regents of the Univ. of Okla.*,
    468 U.S. 85 (1984) ................................................................................................................ 3, 9

*Ohio v. Am. Express Co.*,
    138 S. Ct. 2274, 2284 (2018) ........................................................................................ 3, 11, 12

*Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indemnity Co.*,
    917 F.3d 1249 (11th Cir. 2019) ............................................................................................... 9

*Seagood Trading Corp. v. Jerrico, Inc.*,
    924 F.2d 1555 (11th Cir. 1991) ............................................................................................... 2

*Todd v. Exxon Corp.*,
    275 F.3d 191 (2nd Cir. 2001) .................................................................................................. 7

*Toys 'R' Us, Inc. v. F.T.C.*,
    221 F.3d 928 (7th Cir. 2000) ................................................................................................... 8

*United States v. Apple*,
    791 F.3d 290 (2d Cir. 2015) ................................................................................................ 8, 9

**<u>Other Authorities</u>**

*Franchise Sector*, IZA INST. OF LABOR ECONS. (July 2018) .................................................. 13

*Vertical Arrangements and the Rule of Reason*,
    53 ANTITRUST L.J. 135 (1984) ............................................................................................. 11

Pursuant to this Court's February 11, 2025 Order, D.E. 108, Burger King Worldwide, Inc., Burger King Corporation, Restaurant Brands International, Inc., and Restaurant Brands International Limited Partnership (collectively "Defendants") submit this supplemental memorandum in support of their motion to dismiss.

Whether the Court finds the consolidated complaint or the proposed first amended consolidated class action complaint to be the operative complaint, the complaint here should be dismissed for failure to plausibly allege that the no-poach agreement violates Section 1 of the Sherman Act. The no-poach agreement that Plaintiffs challenge here is a vertical agreement between Burger King Corporation and its approximately 7,000 franchised BURGER KING® restaurants ("BURGER KING® restaurant(s)") and accordingly must be judged under a rule of reason analysis. Thus, Plaintiffs must define a proper antitrust product and geographic market to state a claim, and under the case law, it is clear that a national market limited to workers at BURGER KING® restaurants and restaurants owned by the Burger King Corporation (collectively, "Burger King workers") is not a proper market nor a basis for a plausible antitrust claim. Rather, Burger King workers compete in local markets close to their homes along with other quick service restaurant workers. But plaintiffs do not allege such markets in either their complaint or proposed amended complaint, which accordingly fail to state a plausible claim for relief under a rule of reason analysis.

The complaint does not plausibly allege that the no-poach agreement is part of a nationwide, horizontal agreement and so plaintiffs cannot escape a rule of reason analysis. Nor can plaintiffs save their flawed complaint by arguing that they can bring a rule of reason claim without defining a proper product and geographic market (which they did not even try to do) because they provided direct evidence of anticompetitive effects. The complaint and amended

1

complaint both fail to do so. Neither complaint provides direct evidence that the no-poach agreement depressed wages of Burger King workers in the relevant local geographic markets in which such workers sell their wages, and because neither complaint plausibly alleges anticompetitive impact, the operative complaint must be dismissed for failure to allege a relevant antitrust market.

1. **Governing law**

To survive a motion to dismiss, plaintiffs must allege sufficient facts to state a claim. Pure legal conclusions do not help. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice to state a claim). The allegations must be plausible. "[C]ourts should not permit factfinders to infer conspiracies when such inferences are implausible, because the effect of such practices is often to deter procompetitive conduct." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 593 (1986) (citing *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 762-764 (1984)); *see also* Johnson v. Shelby, 574 U.S. 10, 12 (2014) (plaintiff must "plead facts sufficient to show her claim has substantive plausibility"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.")

2. **A per se analysis is not applicable here**

The per se approach does not apply here for multiple independent reasons.

**First**, "The Supreme Court has made it clear that the per se label should be applied infrequently and with caution." *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1567 (11th Cir. 1991) (citing *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 723 (1988)). Resort to per se rules is "appropriate only after courts have had considerable experience with the type of

2

restraint at issue, and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007) (citations and quotations omitted). "Examples of such per se illegality include horizontal price fixing among competitors, group boycotts, and horizontal market division—business relationships that, in the courts' experience, virtually always stifle competition." *Jacobs v. Tempur-Pedic Internal, Inc.*, 626 F.3d 1327, 1334 (11th Cir. 2010). "Typically only 'horizontal' restraints . . . qualify as unreasonable per se." *Am. Express*, 138 S. Ct. at 2283-84.

Neither this Court nor any other court has had "considerable experience" with the conduct alleged here to enable it to "predict with confidence" that it would always or almost always be invalidated under the rule of reason. *Leegin*, 551 U.S. at 886–87. The Supreme Court has been cautious in extending the per se approach to claims that fall outside previously enumerated categories of liability. *See, e.g.*, *NCAA v. Bd. of Regents of the Univ. of Okla.*, 468 U.S. 85, 100 n. 21, (1984) ("Judicial inexperience with a particular arrangement counsels against extending the reach of the per se rules.").

**Second,** the no-poach provision here is part of a vertical constraint and vertical constraints are judged under a rule of reason. "[N]early every . . . vertical restraint . . . should be assessed under the rule of reason." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018). Because vertical constraints can promote interbrand competition, such constraints are subject to a rule of reason analysis. *Cont'l T.V., Inc. v. GTE Sylvania*, 433 U.S. 36, 49 (1977). *In Cont'l T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. at 58, for example, the Supreme Court applied the rule of reason to vertical restraints imposed by franchisor on the location of franchisees. Similarly, in *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988), the Court found that a supplier could terminate a cost-

3

cutting retailer at the request of another retailer, and held, "a vertical restraint is not per se illegal unless it includes some agreement on price or price levels." More recently, in *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007), the Court held that a challenge to a manufacturer's resale price maintenance requirement imposed on retailers must be judged under a rule of reason analysis, because it "is designed and used to eliminate anticompetitive transactions from the market… [and] applies to vertical price restraints." *Id.* at 898.

In overruling its precedent subjecting a manufacturer's retail price maintenance program to a per se analysis, the Supreme Court stated: "Second, the per se illegality of vertical restraints would create a perverse incentive for manufacturers to integrate vertically into distribution, hardly conducive to fostering the creation and maintenance of small businesses." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. at 725. Applying a per se analysis here would provide a similar perverse incentive to franchisors to integrate vertically into retail completely and cease franchising altogether.

**Third**, no matter how Plaintiffs seek to characterize their claim, Plaintiffs have not alleged a horizontal agreement and cannot invoke the per se rule merely by repeating labels. *All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 746 (11th Cir. 1998) ("'[E]asy labels do not always supply ready answers.'") (quoting Broad. *Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 7 (1979)). The Complaint contains no remotely, plausible allegation of a horizontal conspiracy between BKC's franchisees in the national market for the purchase of labor. Plaintiffs only allege that the franchisees executed a similar franchise agreement with BKC, but parallel adherence to a vertical restriction in a franchise system does not create, or even imply, a horizontal restraint. *See*, *e.g.*, *Twombly*, 550 U.S. at 557, 564 (requiring allegations of "actual agreement" among competitors to state a Section 1 claim).

4

### 3. The McDonald's decision in the *Deslandes* case is distinguishable

This case is unlike *Deslandes v. McDonald's USA, LLC*, 81 F. 4th 699 (7th Cir. 2023), a no-poach case involving McDonald's and its franchises. In that case, the Seventh Circuit ruled that the district court had determined too quickly that a per se approach should not apply, but because of the fundamental difference between that case and this one, discussed below, that ruling does not help plaintiffs here. What is relevant from that case is the Seventh Circuit's ruling that plaintiffs there could not state a plausible rule of reason claim based on a national labor market for workers in a single quick service restaurant chain, a finding that is equally applicable here, and weighs strongly in favor of dismissal.

Unlike Burger King, McDonalds has "many" corporate-owned restaurants located throughout the United States. 2018 W L 3105955, at *1; twenty percent of its locations are owned by the corporation, *see Deslandes v. McDonald's USA, LLC*, 2018 WL 3105955, Case No. 1:17-cv-04857, (ND. Ill. June 35, 2018) ECF No.1; D.E. 34 at ¶ 20. Burger King, by contrast, owned only approximately 50 restaurants in the Miami area out of 7,226 restaurants in the United States as of 2017, D.E. 34 at ¶ 63; *Arrington v. Burger King Worldwide, Inc.*, 47 F4th 1247 (11th Cir. 2022). In other words, less than 0.7% of the Burger King® restaurants in the U.S. were owned by the corporate parent, according to the complaint. McDonald's, by contrast, had proportionately more than 28 times as many corporate owned restaurants.

That fundamental difference makes this case unlike the litigation against McDonald's. That case involved a horizontal agreement. *Deslandes*, 2018 WL 3105955 at *6. Nonetheless, the district court refused to apply a *per se* analysis because it found the no-poach was not a naked horizontal restraint but rather ancillary to a franchise agreement. *Id.* at *7. On appeal, the Seventh Circuit reversed the trial court's grant of judgment on the pleadings to defendants. It agreed with

5

the trial court that the operative complaint alleged a horizontal agreement because "The complaint alleges that McDonald's operates many restaurants itself or through a subsidiary, and that it enforced the no-poach agreement at those restaurants. This made the arrangement horizontal: workers at franchised outlets could not move to corporate outlets, or the reverse." *Deslandes v. McDonalds' USA, LLC*, 81 F.4th 699, 703 (7th Cir. 2023). This cannot be plausibly alleged as to Burger King.

Tellingly, the Seventh Circuit agreed with the trial court that the plaintiffs did not plausibly allege a relevant antitrust market, stating:

> People who work at McDonald's one week can work at Wendy's the next, and the reverse. People entering the labor market can choose where to go—and fast-food restaurants are only one of many options. If wages are too low at one chain, people can choose other employers. The mobility of workers—both from one employer to another and from one neighborhood to another—makes it impossible to treat employees at a single chain as a market.

*Id.* at 702-703; *id.* at 703 ("So the Rule of Reason is out of this suit, and, as quick-look analysis is part of the Rule of Reason, it is out too."). *See also Giordano v. Saks & Co. LLC*, 2025 U.S. App. LEXIS 5871 (2d Cir. March 13, 2025) (unpublished) (In case alleging that Saks Fifth Avenue defendants and brand defendants Louis Vuitton USA Inc., Loro Piana & C. Inc., Gucci America, Inc., Prada USA Corp., and Brunello Cucinelli USA, Inc. violated Sherman Act by entering into so-called "no-hire" agreements, the second circuit affirmed dismissal, applying rule of reason analysis because the agreement was primarily vertical and because courts do not have "considerable experience" with this type of arrangement).

The Seventh Circuit reversed the district court ruling in *Deslandes* because of the possibility that the restraint was a naked restraint of trade. *Id.* at 703. The Seventh Circuit opinion does not help plaintiff because the rule of reason analysis applies here regardless of whether the no-poach agreement is clearly ancillary to a pro-competitive agreement.

6

The Seventh Circuit opinion demonstrates that the amended complaint here does not state a plausible claim insofar as it tries to allege a rule of reason claim based on a national market for Burger King workers. *See also Todd v. Exxon Corp.,* 275 F.3d 191, 200 (2nd Cir. 2001) ("Cases in which dismissal on the pleadings is appropriate frequently involve ... failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes....") (Sotomayor, J.); *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc*., 732 F.2d 480, 488 (5th Cir. 1984) (In order to overcome this heavy presumption against single produce markets, the plaintiff must point to "exceptional market conditions" that have created a market for a single brand that would otherwise be just "one brand in a market of competing brands."); *In re American Express Anti-Steering Rules Antitrust Litigation*, 361 F.Supp.3d 324, 343(E.D.N.Y. 2019) ("It is an understatement to say that single-brand markets are disfavored.") (citing cases).

### 4. **The prior Eleventh Circuit opinion in *Arlington* does not address the current issues before this Court**

The Eleventh Circuit's decision in this case, holding Burger King Corporation and its franchises could conspire for purposes of Section 1 of the Sherman Act does not help plaintiffs either. That decision simply means that the Burger King Corporation and its franchisees are separate economic actors, with separate interests, who are capable of entering into an agreement for purposes of the Sherman Act. While the Eleventh Circuit found that Burger King Corporation and its independently owned franchises were separate independent actors, it did not address whether their relationship was vertical or horizontal, much less whether Plaintiffs had plausibly alleged a national, horizontal conspiracy between the Burger King defendants, whose 50 corporate-owned stores were all in Miami-Dade, and its approximately 7,000 plus franchises scattered across the country.

Here, the no-poach agreement is a vertical agreement. It is part of a franchise agreement between Burger King Corporation and its franchises, which is indisputably a vertical relationship: "Restraints imposed by agreement between competitors have traditionally been denominated as horizontal restraints, and those imposed by agreement between firms at different levels of distribution as vertical restraints." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. at 730. The Court there rejected the argument that it should look at the alleged effect of the restraint to determine whether it was vertical or horizontal, stating: "The dissent apparently believes that whether a restraint is horizontal depends upon whether it is anticompetitive effects are horizontal, and not upon whether it is the product of a horizontal agreement. That is of course a conceivable way of talking, but if it were the language of antitrust analysis there would be no such thing as an unlawful vertical constraint since all anticompetitive effects are by definition horizontal effects." *Id.* at 730 n. 4 (internal citation omitted). The Court concluded its analysis: "a restraint is horizontal not because it has horizontal effects, but because it is the product of a horizontal agreement." *Id.*

Plaintiff cannot transform a vertical agreement into a horizontal one by claiming that they alleged a hub and spoke conspiracy. The allegations here simply do not meet the requirements for either of the two categories of "hub-and-spoke" conspiracy cases. The first category includes cases like *United States v. Apple*, 791 F.3d 290 (2d Cir. 2015) and *Toys 'R' Us, Inc. v. F.T.C.*, 221 F.3d 928 (7th Cir. 2000) where the "hub" orchestrates an agreement among the "spokes," and the spokes agree among themselves to adhere to the hub's terms. *See Apple*, 791 F.3d at 314; *Toys 'R' Us, Inc.*, 221 F.3d at 934–35. But here, Plaintiffs do not even make factual allegations that its approximately 7,000 franchised restaurants entered into an agreement with one another; nor do they allege any facts to support the bald, legal assertion (D.E. 34 at ¶¶ 2, 7, 150–54) that BKC orchestrated a series of separate agreements with its franchisees. Although the complaint alleges

that the No-Hire Clause functioned as an agreement "between and among Burger King and its franchisees," (D.E. 34 at ¶ 10), that is a bald legal assertion unsupported by any facts and so fails as a matter of law. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indemnity Co.*, 917 F.3d 1249, 1270-71 (11th Cir. 2019). Nor does the amended complaint rectify these shortcomings. Rather, it simply adds details concerning the relationship between the franchisees and the franchisor, but these additional allegations do not allege a horizontal agreement among the franchisees.

The second category of hub-and-spoke conspiracy cases involve a hub that was compelled by the spokes to aid the unlawful arrangement amongst the spokes. *See, e.g.*, *NCAA v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 99 (1984) ("[T]he policies of the NCAA with respect to television rights are ultimately controlled by the vote of member institutions."); *Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 336–339 (1982) (physician members controlled trade association and fixed prices by majority vote). Here, both complaints lack factual allegations that the franchisees "compelled" BKC to participate in the purported horizontal conspiracy between the franchisees.

The key to any per se illegal hub-and-spoke conspiracy is "the existence of a 'rim' to the wheel in the form of an agreement among the horizontal competitors." *United States v. Apple, Inc.*, 791 F.3d 290, 314 & n.15 (2d Cir. 2015) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203-04 (4th Cir. 2002)). *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705 (11th Cir. 1984) is instructive. There, plaintiffs alleged that Waffle House, the franchisor, and certain of its franchisees, conspired to violate Section 1 by horizontally dividing, allocating and imposing restrictions regarding territories in which they could operate. 734 F.2d at 711. The Eleventh Circuit said that to show "a horizontal restriction, plaintiffs will have to show that Waffle House and those

9

of its franchisees alleged to be part of the combination or conspiracy agreed among themselves to the division of territories. *Id*. Here, Plaintiffs have not even attempted to allege that any franchisee "participate[d] in the decision" to include a No Hire Provision in the franchise agreement.

The fact that BKC is not only the franchisor but also owns and operates 50 BURGER KING® restaurants, all in the Miami Metropolitan area, D.E. 34 at ¶ 22, and so functions as a dual distributor—as did Waffle House—does not alter the analysis—the rule of reason remains the appropriate analytical vehicle. *See Jacobs*, 626 F.3d at 1340–42 (rejecting *per se* horizontal price fixing claim that dual-distributor manufacturer imposed resale price maintenance requirement on its distributors); *see also PSKS, Inc.*, 615 F.3d at 421 n.8 (observing as of 2010, "eight other circuits have applied the traditional rule of reason to dual distribution systems").

Here, plaintiffs allege a national conspiracy and seek to certify a national class defined as: "All persons in the United States who are current or former employees of a Burger King restaurant operated by Burger King or a franchisee from at least 2010 to the present (the 'Class')." Amended Comp. ¶166. Tellingly, the plaintiffs do not allege a horizontal agreement between the members of the independently owned BURGER KING® franchises. Nor do plaintiffs' factually unsupported allegations, that BKC, which owns about 50 Burger King branded restaurants in the Miami area, D.E. 34 at ¶ 22, entered into a national conspiracy to restrain competition for Burger King workers throughout the country "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

   5. **Plaintiffs do not and cannot state a claim under rule of reason**

In their complaint and proposed amended complaint, Plaintiffs allege that Defendants' conduct constitutes a per se violation of Section 1 of the Sherman act and in "the alternative, Defendants are liable under a 'quick look analysis.'" *See* D.E. 34 at ¶¶ 156 and 157 and D.E. 71-

1 at ¶¶ 197 and 198. On appeal, plaintiffs argued that they stated a rule of reason claim, even though they have not even attempted to allege a product market or a geographic market, because they claim to have alleged actual evidence of direct impact on competition, which sometimes can be a substitute for defining a proper antitrust market. That argument is barred by binding Supreme Court precedent, among other shortcomings.

In *Ohio v. Am. Express Co.*, the Supreme Court noted that it has sometimes permitted a lesser showing of the relevant market when plaintiffs offered actual evidence of an adverse effect on competition and explained that lesser showing applied only in cases involving horizontal agreements. *Ohio v. Am. Express Co.*, 138 S. Ct. at 2284 n.7 ("Given that horizontal restraints involve agreements between competitors not to compete in some way, this Court concluded that it did not need to precisely define the relevant market to conclude that these agreements were anticompetitive."). The Court explained Plaintiffs must define a proper antitrust market in cases involving vertical agreements, stating: "Vertical restraints often pose no risk to competition unless the entity imposing them has market power, which cannot be evaluated unless the Court first defines the relevant market." *See id.* (noting that a vertical restraint 'may not be a serious concern unless the relevant entity has market power'); Easterbrook, Vertical Arrangements and the Rule of Reason, 53 ANTITRUST L.J. 135, 160 (1984) ('[T]he possibly anticompetitive manifestations of vertical arrangements can occur only if there is market power')." *Id.*

Moreover, even in cases involving horizontal agreements, including cases judged under a quick look standard, the required market showing is relaxed, not eliminated. Plaintiffs must still provide at least a rough market definition to plausibly allege market power by alleging actual detrimental impact because the direct evidence must show an anticompetitive effect on something – on a relevant market. Without some rough benchmark, there is no way to determine whether the

alleged misconduct has a direct impact on competition. *See Am. Express*, 138 S. Ct. at 2284 n.7 (noting that in cases involving horizontal restraints, the Court has not required plaintiffs "to precisely define the relevant market to conclude that these agreements were anticompetitive"); *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 460 (1986) (horizontal cases with direct evidence do not require a "detailed market analysis"). Here, Plaintiffs do not even provide a rudimentary market analysis and so their contention that they provided evidence of an actual detrimental impact necessarily falls short.

Finally, neither the complaint nor the amended complaint alleges actual evidence of direct impact on competition. Although plaintiffs allege that defendants' actions have depressed workers' wages and limited their mobility, that is a bald legal conclusion, devoid of any factual support and does not suffice to withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 & 681 (2009) (in evaluating motion to dismiss, conclusory allegations "are not entitled to be assumed true," nor are legal conclusions); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice to state a claim).

Plaintiffs stop short of alleging that the no-hire provisions were enforced, let alone that they were enforced systematically, or at least often. Plaintiffs allege that the employees of the BURGER KING® franchises were unaware of the no-hire provision and so the four-year statute of limitations should be tolled under a fraudulent concealment theory. But that allegation eviscerates the plausibility of Plaintiffs' direct impact argument because if the no-hire provisions were enforced with sufficient frequency to have an impact on workers' wages, then workers would certainly know of those provisions.

Plaintiffs cite several economic studies and newspaper articles (D.E. 34 at ¶¶ 46-54; D.E. 71-2 ¶¶ 46-54) regarding the impact of no-hire provisions on workers' wages, but those studies concern the alleged impact of no-hire provisions in the aggregate, not just across assorted companies, but also assorted industries. For instance, one study that plaintiffs cite analyzed the 2016 franchise agreements used by the 156 of the largest franchise chains, including among others, Jiffy Lube, H&R Block, and Anytime Fitness, LLC.[1] Whatever validity those studies have regarding the aggregate impact of no-hire provisions, they cannot support a plausible allegation that a no-hire provision in Burger King Corporation's standard franchise agreement, without any evidence regarding its enforcement, had an adverse detrimental impact on workers in any particular geographic market, let alone on Burger King workers across the country.

The allegations regarding the three named plaintiffs similarly fail to demonstrate an actual impact. Plaintiffs allege that Jarvis Arrington attempted to transfer to another BURGER KING® restaurant, was told he needed approval from his current franchise, and never heard back from the franchise to which he applied. D.E. 34 at ¶¶ 106-107. He does not allege he would have been paid more at the second franchise or received better benefits. D.E. 34 at ¶¶ 106-107. So even assuming that the second franchise wanted to hire him but did not because of the no-poach provision, he has alleged at most the no-hire provision limited his job mobility. Plaintiffs allege that Sandra Munster was denied a release from a prior franchise and so could not move to a different franchise. *See* D.E. 34 at ¶¶ 111-116. But she does not allege she would have earned more at the second franchise or received additional benefits, at most she has alleged the no-hire provision limited her job

---

[1] *See* Alan B. Krueger & Orley Ashenfelter, Theory and Evidence on Employer Collusion in the Franchise Sector, IZA INST. OF LABOR ECONS. (July 2018), http://ftp.iza.org/dp11672.pdf (last visited Mar. 6, 2025), cited in D.C. 34 at ¶46 n.8.

13

mobility. Finally, plaintiffs do not allege that Geneva Blanchard ever tried to move to another BURGER KING® restaurant.

## CONCLUSION

For the reasons stated above and in the defendants' motion to dismiss and reply, the complaint should be dismissed with prejudice.[2]

Respectfully submitted,

**HEISE SUAREZ MELVILLE, P.A.**

By: /s/ Luis E. Suarez
  Luis E. Suarez
  (Florida Bar No. 390021)
  Patricia Melville
  (Florida Bar No. 475467)
  Mark J. Heise
  (Florida Bar No. 771090)
  1600 Ponce De Leon Boulevard
  Suite 1205
  Coral Gables, Florida 33134
  Telephone: (305) 800-4476
  Email: lsuarez@hsmpa.com
  Email: pmelville@hsmpa.com
  Email: mheise@hsmpa.com

**BOIES SCHILLER FLEXNER LLP**

By: /s/ Carl E. Goldfarb
  Stuart H. Singer, Esq.
  (Florida Bar. No. 377325)
  Carl E. Goldfarb, Esq.
  (Florida Bar No. 125891)
  401 East Las Olas Boulevard, Suite 1200
  Fort Lauderdale Florida 33301

---

[2] Defendants also incorporate their arguments in their motion to dismiss, D.E. 42, and related briefing, other than the claim that the defendants cannot conspire for purposes of Section 1, including that BKW, RBI, and RBI Ltd. partnership should be dismissed because plaintiffs have failed to plausibly allege that these defendants have engaged in wrongful conduct and that plaintiffs' claims prior to October 2014 as time barred.

14

        Telephone: (954) 356-0011
        Facsimile:  (954) 356-0022
        Email: ssinger@bsfllp.com
        Email: cgoldfarb@bsfllp.com
        Email: ftleserve@bsfllp.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 14, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court via the Court's CM/ECF system for electronic service on all counsel of record.

        By: */s/ Carl E. Goldfarb*
           Carl E. Goldfarb, Esq.