UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 18-24128-CIV-MARTINEZ

JARVIS ARRINGTON, *et al.*,

    Plaintiffs.

v.

BURGER KING CORPORATION, *et al.*,

    Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss ("Motion"), (ECF No. 42). The Court previously granted the Motion on the grounds that Plaintiffs had "not sufficiently alleged that [Burger King Corporation] and its franchisees are separate economic actors for antitrust purposes." (ECF No. 67 at 12). On appeal, the Eleventh Circuit reversed, and held that "the complaint plausibly alleged concerted action." (ECF No. 81 at 8). The case was remanded to this Court for further proceedings. (*Id.*). The Court now rules on the Motion's remaining arguments. The Court has reviewed the Motion, Plaintiffs' Opposition, (ECF No. 49), Defendants' Reply, (ECF No. 55), Plaintiffs' Supplemental Authorities, (ECF Nos. 54, 59, 62, 98), Defendants' Supplemental Authority, (ECF No. 60), Plaintiffs' Supplemental Briefing, (ECF No. 110), and Defendants' Supplemental Briefing, (ECF No. 109). After careful consideration, Defendants' Motion is **DENIED**.

### I. BACKGROUND

Burger King[1] issues franchise licenses to own and operate Burger King branded restaurants pursuant to a standard franchise agreement. (Compl., ECF No. 34 ¶¶ 5, 8). As of 2017, the Burger

---

[1] Defendant Burger King Corporation ("BKC") is owned by Defendant Burger King

King chain has more than 7,226 Burger King branded restaurants in the United States. (*Id.* ¶ 63). Burger King owns and operates 50 of these, all in the Miami area. (*Id.* ¶¶ 22, 63). The remainder are franchised. (*Id.*).

A franchisee joins the Burger King system by executing a standard franchise agreement with BKC. From at least 2010 until at least September 13, 2018, the agreement also included a "No-Hire Agreement." (Compl. ¶ 8). The No-Hire Agreement prohibits BKC and its franchisees from attempting to poach any current employee of BKC or another Burger King franchisee or hire any employee of BKC or another Burger King franchisee for six months after the employee leaves the first Burger King restaurant, unless the first Burger King employer gives the later Burger King employer prior written consent.[2] (Compl. ¶ 8).

Plaintiffs were all employees of Burger King franchise restaurants at some point between 2010 and 2018. Jarvis Arrington was a line cook for a Burger King franchisee in Illinois from June through August 2017; Geneva Blanchard has been a crew member for a Burger King franchisee in New Orleans since 2013; and Sandra Munster worked for another franchisee in Illinois for fifteen years, where she started as a supervisor and ultimately became the general manager. (Compl. ¶¶ 18–20).

---

Worldwide, Inc. ("BKW"), which is owned by Defendant Restaurant Brands International, Inc. ("RBI"), the sole general partner of Defendant Restaurant Brands International Ltd. Partnership ("RBI LP"). (Compl. ¶ 21–28). The Court will collectively refer to Defendants as "Burger King."

[2] The No-Hire Agreement states:

> Neither BKC nor Franchisee will attempt, directly or indirectly, to entice or induce, or attempt to entice or induce any employee of the other or of another Franchisee of BKC to leave such employment, or employ such employee within six (6) months after his or her termination of employment with such employer, except with the prior written consent of such employer.

(Compl. ¶ 8).

2

Plaintiffs allege that through the No-Hire Agreement, the "franchisees, at the direction of and with the assistance of Burger King itself, have together colluded to depress wages and employment opportunities of employees who work in Burger King branded restaurants through[out] the United States." (Compl. ¶ 7). Plaintiffs claim that the No-Hire Agreement constitutes an unreasonable restraint on trade and is "*per se* unlawful" under Section 1 of the Sherman Act, 15 U.S.C. § 1. (Compl. ¶¶ 2, 10, 13, 156). Alternatively, Plaintiffs assert that Defendants are liable under a "quick look analysis," stating that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anti-competitive effect on employees and labor." (*Id.* ¶ 157). Plaintiffs seek an award of damages and equitable relief on behalf of every person who worked at a Burger King restaurant from "at least 2010 to the present." (*Id.* ¶¶ 125, 160).

Defendants move to dismiss the Complaint and argue that (1) Plaintiffs fail to state a claim under Section 1 of the Sherman Act; (2) Plaintiffs fail to plausibly allege that Defendants BKW, RBI, and RBI LP engaged in wrongful conduct; and (3) claims prior to October 2014 are time barred. (*See* Mot.).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court will grant a motion to dismiss if the complaint fails to state a claim for which relief can be granted. At this stage of the case, "the question is whether the complaint 'contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Worthy v. Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (alteration adopted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he Court accepts the factual

3

allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health and Human Servs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). Although a complaint need not include detailed factual allegations, a plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

The Complaint in this case references a standard franchise agreement. A document is incorporated by reference into a complaint where (1) it is central to the plaintiff's claim, (2) its contents were alleged in the complaint, and (3) no party questions those contents. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, all three factors are met, so the Court will consider the franchise agreement attached to Defendants' Motion to Dismiss. (ECF No. 42-2).

### III. DISCUSSION

#### A. Plaintiffs Plausibly Allege a Claim Under Section 1 of the Sherman Act.

The Sherman Antitrust Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Restraints of trade are classified as either vertical or horizontal. Agreements between competitors are horizontal, while agreements between parties at different levels in the distribution chain of a specific product are vertical. *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1568–69 (11th Cir. 1991). Horizonal agreements are typically considered *per se* unlawful, while vertical agreements are typically subject to a rule of reason analysis that weighs all factors to determine whether the anticompetitive harm outweighs any procompetitive benefits of the restraint of trade. *Id.* at 1569; *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885–86 (2007). There is also a third, intermediate mode of analysis—the "quick-look"

4

approach. Courts take a "quick-look" where the *per se* rule is inapplicable, but the anticompetitive effects of an agreement are so obvious that "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *California Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770 (1999).

Plaintiffs allege that Burger King's No-Hire Agreement is a horizontal restraint of trade and a *per se* violation of Section 1 of the Sherman Act. (Compl. ¶¶ 2, 10, 13, 156). Alternatively, Plaintiffs claim that Defendants are liable under the quick look approach. (*Id.* ¶ 157). Defendants disagree and urge the Court to apply the rule of reason analysis and dismiss Plaintiffs' Complaint. (*See* Mot. at 7–8). While whether the *per se*, rule of reason, or quick look approach applies is undoubtedly a question of law, it is a question that "is predicated on a *factual inquiry* into the restraint's competitive effect." *Nat'l Bancard Corp. v. VISA U.S.A., Inc.*, 779 F.2d 592, 596 (11th Cir. 1986) (emphasis added). Because more factual development is necessary, the Court declines to decide on a rule of analysis at this time.

To establish a violation of Section 1 of the Sherman Act, a plaintiff must show (1) a contract, combination, or conspiracy among two or more separate entities that (2) unreasonably restrains trade, (3) affects interstate or foreign commerce, and (4) causes antitrust injury and damages. *See Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indem. Co.*, 917 F.3d 1249, 1260 (11th Cir. 2019); 15 U.S.C. § 1. Defendants argue that Plaintiffs fail to plausibly plead the second element because the alleged restraint is subject to a rule of reason analysis and Plaintiffs fail to define the relevant market. (*See* Mot.).

Plaintiffs allege that Defendants "orchestrat[ed] an agreement to restrict competition among Burger King and its franchisees" to not compete for labor, "which unfairly depressed employee wages and unreasonably restrained trade." (Compl. ¶ 151). Plaintiffs allege that the No-Hire Agreement is a horizontal agreement among competitors to not compete for labor, which is

5

*per se* unlawful. (Compl. ¶¶ 2, 10, 13, 156). Plaintiffs also sufficiently alleged that the anticompetitive effects are so obvious that "an observer with even a rudimentary understanding of economics could conclude that [the agreement] in question would have an anticompetitive effect on customers and markets." (Compl. ¶ 157); *California Dental*, 526 U.S. at 770. Plaintiffs have plausibly alleged that the agreement is unreasonable under both the *per se* rule and quick look analysis. However, as explained above, more factual development is necessary to determine which standard of review will apply to the No-Hire Agreement. Plaintiffs plausibly plead a claim for violation of Section 1 of the Sherman Act.

### B. Plaintiffs State a Plausible Claim Against All Defendants.

Defendants argue that Plaintiffs fail to allege that Defendants BKW, RBI, and RBI LP engaged in wrongful conduct specifically attributable to them and instead "only offers conclusory allegations of purported conspiratorial conduct." (Mot. at 18). Plaintiffs respond that all Defendants "are engaged in and benefit from maintaining the antitrust conspiracy between Burger King and its franchisees." (ECF No. 49 at 16). Plaintiffs also note that RBI LP is responsible for BKC's franchise-related liabilities, and RBI is liable for RBI LP's actions and debts as its sole general partner. (*Id.*). Defendants reply that these allegations referenced by Plaintiffs fail to include any allegations of direct involvement by BKW, RBI, or RBI LP. (ECF No. 55 at 10).

Plaintiffs sufficiently allege that each Defendant played a role in the purported conspiracy. Plaintiffs allege more than mere corporate affiliation and place of incorporation; Plaintiffs allege that Defendants "orchestrated, entered into, and engaged in unlawful . . . restraint of trade and commerce . . . by orchestrating an agreement to restrict competition among Burger King and its franchisees, which unfairly depressed employee wages and unreasonably restrained trade." (Compl. ¶ 150–51). "Defendants' conduct included concerted efforts, actions, and undertakings among the Defendants and franchise owners with the intent, purpose, and effect of: (a) artificially

depressing the compensation of Plaintiffs and Class members; (b) eliminating competition among BKC and franchise owners for labor; and (c) restraining employees' ability to secure better compensation, advancement, benefits, and working conditions." (*Id.* ¶ 152). "Defendants' conduct in furtherance of the No-Hire Agreement was authorized, ordered, or executed by their officers, directors, agents, employees, or representatives while actively engaging in the management of Defendants' affairs." (*Id.* ¶ 154). Plaintiffs' allegations are sufficient to allow this Court to reasonably infer the involvement of all Defendants in the purported conspiracy.

### C. Plaintiffs Sufficiently Plead Fraudulent Concealment.

Under antitrust law, "a cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures the plaintiffs' business." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999), amended in part, 211 F.3d 1224 (11th Cir. 2000) (cleaned up). Under the applicable four-year statute of limitations, claims that accrued more than four years before this action was filed are time-barred, unless the running of the statute of limitations was tolled by Defendants' fraudulent concealment. 15 U.S.C. § 15(b). For this tolling doctrine to apply, Plaintiffs must demonstrate that "the defendants concealed the conduct complained of, and that [plaintiffs] failed, despite the exercise of due diligence on [their] part, to discover the facts that form the basis of [their] claim." *Morton's Mkt.*, 198 F.3d at 832 (quoting *In re Beef Indust. Antitrust Litig.*, 600 F.2d 1148, 1169 (5th Cir. 1979)) (internal quotation marks omitted). To satisfy the due-diligence requirement, Plaintiffs must demonstrate that once they either knew of their claim or had "notice sufficient to prompt [them] to investigate," Plaintiffs pursued the claim diligently. *See id.* (citing *In re Beef Indust. Antitrust Litig.*, 600 F.2d at 1170). When a plaintiff is on "notice" of its claim is a question of fact. *Id.* (citing *Ballew v. A.H. Robins Co.*, 688 F.2d 1325 (11th Cir. 1982)).

Defendants argue that Plaintiffs fail to allege an affirmative act by Defendants and that the franchise agreements were readily accessible. (Mot. at 19–20). However, Plaintiffs allege that Burger King concealed its misconduct in many ways, *see* Compl. ¶¶ 88–93, 133–48, most importantly that it affirmatively acted when it lied to prospective employees, telling them that "employment terms and conditions . . . will vary and are determined solely by the Franchisee." (*Id.* ¶ 141). In fact, franchisees' hiring decisions were constrained by the No-Hire Agreement and were not truly independent. (*Id.* ¶ 78). Plaintiffs allege that they "had neither actual nor constructive knowledge of the unlawful conspiracy orchestrated by Defendants, nor would any reasonable amount of diligence . . . have put them on notice of the conspiracy." (Compl. ¶ 133). Plaintiffs had "no reason to know of the No-Hire Agreement." (*Id.* ¶ 142). Taking all of Plaintiffs' allegations as true, as the Court must at this stage, Plaintiffs have sufficiently pled fraudulent concealment.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED** that:

1. The Motion, (ECF No. 42), is **DENIED**.
2. The Parties are directed to submit a Joint Status Report and a Proposed Joint Scheduling Report within two weeks of the date of this Order.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9 day of April, 2025.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record